**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES,

       Plaintiff,

vs.                                                                                                          Cr. No. 04-559 MV

DEREK CODI WALKER,

       Defendant.

**MEMORANDUM SENTENCING OPINION**

       In September or October of 2003, Defendant, a 20-year-old methamphetamine addict known for his non-assertive nature, was introduced by a friend to Mike Kee, an older man who, unbeknownst to Defendant, was a confidential informant. Mr. Kee aggressively befriended Defendant, providing Defendant, who lived at home and did not have a car, rides; giving Defendant a new motor for his car; permitting Defendant to use his expensive SUV; offering to sell the SUV to Defendant at a price well below its market value; and providing Defendant with methamphetamine free of charge. On approximately fifty occasions over the next two months, Mr. Kee provided Defendant with personal-use quantities of methamphetamine free of charge and used methamphetamine with Defendant.

       Defendant's parents, suspecting that Mr. Kee was involved in illegal activities, attempted to protect their son from Mr. Kee's influence. Defendant's parents forbade Defendant from associating with Mr. Kee, ordered Mr. Kee to stay away from their son and off their property, and, on occasion, physically removed Mr. Kee from their property. Mr. Kee, however, was undeterred and continued his association with Defendant by parking outside Defendant's parents'

property and signaling Defendant to walk out to his car. Defendant, who was severely addicted to methamphetamine and knew that Mr. Kee would supply it free of charge, defied his parents and continued to associate with Mr. Kee.

After plying Defendant with free drugs for several months, Mr. Kee told Defendant that his source of methamphetamine had "dried up" and that he needed a new source. Mr. Kee, who knew that Defendant occasionally purchased personal-use quantities of methamphetamine for his friends from a woman named Yvonne Martinez, requested that Defendant ask Ms. Martinez if she would sell methamphetamine directly to Mr. Kee. Ms. Martinez refused. Mr. Kee then asked Defendant to obtain methamphetamine from Ms. Martinez for him. Defendant agreed and on three occasions in December, Defendant obtained small quantities (1/8 to 1/4 ounces) of methamphetamine from Ms. Martinez for Mr. Kee, and/or for an agent posing as Mr. Kee's relative.[1] Defendant did not initiate any of these transactions and gave the money from these transactions to Ms. Martinez.[2] In return for facilitating these transactions, Defendant was given small amounts of methamphetamine for his personal use.

---

[1] Defendant objected to statements in the PSR that he sold methamphetamine to his friend Larrison Smith. In his testimony at the sentencing hearing, however, Defendant admitted that for one of the three smaller transactions at issue in this case, Defendant obtained the methamphetamine for Smith and Smith supplied Mr. Kee. Tr. at p. 44.

[2] On one occasion, the agent posing as Mr. Kee's relative was $50 short of the amount that Defendant had to pay Ms. Martinez for the drugs and Defendant agreed that the agent could pay him the additional money due on the next transaction they conducted. The parties dispute whether Defendant told the agent that he "normally got" $350 per quarter ounce or whether Defendant told the agent that a quarter ounce "usually goes for" $350. Tr. at p. 46. The Court finds Defendant's contention that he would not have said that he "normally" got $350 per quarter ounce because he normally did not deal in these quantities to be credible and consistent with the testimony and evidence that Defendant was a user and small-time dealer in personal-use quantities only.

After completing these smaller transactions, Mr. Kee asked Defendant to facilitate a half-pound purchase of methamphetamine for Mr. Kee's cousin. Defendant refused. Mr. Kee tried to pressure Defendant into making the transaction by telling Defendant that he owed Mr. Kee for all the methamphetamine that Mr. Kee had provided to him without charge. Mr. Kee also implored Defendant to make the deal happen, stating that he needed the money to support his wife and children. Defendant resisted Mr. Kee's pleas and pressure and repeatedly declined to facilitate this transaction. Mr. Kee persisted, however, calling Defendant two or three times per day to attempt to persuade, cajole, and pressure him into conducting the transaction. If Defendant did not take his calls or hung up on him, Mr. Kee would try to reach Defendant by calling Defendant's friends or coming by Defendant's house. After approximately a month of daily badgering, Defendant agreed to try to facilitate the transaction. Defendant did not believe, however, that he actually could get that quantity of methamphetamine from Ms. Martinez.

To Defendant's surprise, Ms. Martinez agreed to front him the half-pound of methamphetamine with the understanding that Defendant would pay Ms. Martinez $5,500.00 when the methamphetamine was sold. Defendant and Mr. Kee agreed to split the $1000 profit on the transaction. On January 20, 2004, Defendant had a friend drive him to Ms. Martinez's home to obtain the half-pound of methamphetamine. Defendant's friend then drove Defendant and the half-pound of methamphetamine to Mr. Kee's home, where Defendant was arrested by the task force agents who had arranged the transaction in conjunction with Mr. Kee. At the time he was arrested, the task force agents tried to get Defendant to deliver the buy money to Ms. Martinez so that they could arrest her but Defendant refused.

Defendant was subsequently charged in a two-count indictment with distribution of less

3

than 50 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and possession with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  Defendant subsequently entered into a plea agreement in which he agreed to plead guilty to both counts in return for stipulations by the government that he was a minor participant in the criminal activity, that he qualified for the safety valve, and that he had demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  The plea agreement specifically permitted Defendant to move the Court for a reduced sentence based on the government's conduct in this case.

## ANALYSIS

Defendant filed a motion for downward departure pursuant to the Federal Sentencing Guidelines ("Guidelines") arguing that the nature and circumstances of the offense and the history and characteristics of the Defendant supported a sentence below the applicable Guidelines range. At the sentencing hearing, however, Defendant's counsel clarified that despite the title of the motion, Defendant was seeking a sentence outside the Guidelines pursuant to *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), and not a downward departure pursuant to the Guidelines.

### I.  **The Effect of *Booker* on Federal Court Sentencing**

The *Booker* decision has changed the landscape of federal court sentencing in important ways.  In *Booker*, the Supreme Court held that the Guidelines violated the Sixth Amendment.  To remedy the constitutional problem, the Court excised 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act that made the Guidelines mandatory, along with the appellate review

provisions of 18 U.S.C. § 3742(e) and any cross-references to § 3553(b)(1). Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions ... district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." *Id*. Further, the sentencing factors set forth in § 3553(a), "which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." *Id*.

After *Booker*, the Guidelines range is one of the factors that a sentencing judge must consider in determining an appropriate individualized sentence. A sentencing judge must also consider the provisions of 18 U.S.C. § 3553(a). The overriding principle and basic mandate of that section require district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2). Those purposes are:

>    (a)   retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment");
>    (b)   deterrence;
>    (c)   incapacitation ("to protect the public from further crimes"); and
>    (d)   rehabilitation ("to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner").

18 U.S.C. § 3553(a)(2)(A)-(D).

In determining the sentence minimally sufficient to comply with § 3553(a)(2)'s purposes of sentencing, the court must consider the following factors: (1) "the nature and the circumstances of the offense and the history and characteristics of the defendant"; (2) "the kinds of sentences available"; (3) the guidelines and policy statements issued by the Sentencing Commission,

including the advisory guideline range; (4) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a).

## II.     **Advisory Guidelines Range**

The Court's first step in imposition of a sentence after *Booker* is establishing the appropriate advisory Guidelines range. *See United States v. Hughes*, 396 F.3d 374, 381 (4th Cir. 2005). In the instant case, the PSR assigned Defendant a base offense level of 34. The parties stipulated that Defendant was a minor participant in the criminal activity, reducing his base offense level to 30 pursuant to § 2D1.1(a)(3). After reductions of two levels for the safety valve pursuant to § 5C1.2(a)(1), two levels for minor participation pursuant to § 3B1.2(b), and three levels for acceptance of responsibility pursuant to § 3E1.1, Defendant's total offense level is 23. With no prior criminal history, Defendant's Guidelines imprisonment range is 46-57 months.

## III.    **Based on considerations set forth in 18 U.S.C. § 3553(a) and *Booker*, Defendant merits a non-Guidelines sentence**

After *Booker*, the Court has increased discretion to consider a defendant's individual circumstances in tailoring a reasonable sentence. Furthermore, after *Booker*, it is the district court's duty to consider the various sentencing factors set forth in 18 U.S.C. § 3553(a). In the instant case, these considerations dictate that a non-Guidelines sentence be imposed.

1.      The Nature and Circumstances of the Offense

The nature and circumstances of the offense support the imposition of a sentence outside the Guidelines. The government, through the use of an older and more sophisticated confidential informant, plied an easily manipulated young drug addict with free drugs and expensive gifts for

several months and then exploited his indebtedness to the confidential informant for the free drugs to coerce him into facilitating a significant drug transaction.  There is no evidence that Defendant was predisposed to engage in such conduct.  In fact, to the contrary, the evidence is that Defendant, despite being addicted to methamphetamine for several years, having limited financial resources, and having access to a source of methamphetamine, had never purchased any distribution quantities of methamphetamine prior to the involvement of the government.  While Defendant occasionally "scored" personal-use quantities of drugs for his friends in exchange for using the drugs with them, it was only through significant government involvement that Defendant was induced to procure distribution quantities of methamphetamine.

The Court is disturbed by the fact that the government provided free drugs to a known drug addict over a significant period of time in order to manipulate him into facilitating certain drug transactions.  The fact that the government aggressively implemented its plan to ply Defendant with free drugs despite Defendant's parents' efforts to protect their son is particularly unsettling.

In sentencing defendants, the Court strives to achieve uniformity.  This goal, "ensuring similar sentences for those who have committed similar crimes in similar ways" and ensuring a match between "sentences and real conduct" often is highlighted by federal courts and the Sentencing Commission in discussions about the central utility of the Guidelines.  *See Booker*, 125 S. Ct. at 760; *United States v. Wilson*, 355 F. Supp. 2d 1269, 1284 (D. Utah 2005) (the Congressional "command" to achieve uniformity is "one of the fundamental purposes underlying the Sentencing Reform Act"); 18 U.S.C. § 3553(a)(6) (the Guidelines seek "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

conduct"). Numerous cases involve the limited distribution by the government of drugs to drug users as part of an investigation or sting. The Court, however, could not locate a single case involving the government supplying a known addict with free drugs over a period of months in an attempt to make the addict feel sufficiently indebted to facilitate the purchase of distribution quantities of drugs.

The extent of government involvement in the crime at issue in this case distinguishes Defendant from other defendants with similar criminal histories who facilitated transactions involving similar quantities of drugs and, consequently, imposition of a Guidelines sentence does not promote uniformity in sentencing. "If the Supreme Court's ruling in *Booker* does anything, it gives a defendant hope that where the factors listed in Section 3553(a) warrant a lesser sentence than the Guidelines recommend, and where the Guidelines' goal of uniformity is not advanced, a judge can depart from the sentence recommended by the Guidelines." *United States v. Perez-Nunez*, 368 F. Supp. 2d 1265, 1270 (D.N.M. 2005).

Defendant's participation in the sale of distribution quantities of methamphetamine was the result of aggressive encouragement and involvement by the government. While this does not absolve Defendant of guilt, it does make Defendant less blameworthy than an enthusiastic participant and supports the imposition of a sentence outside the Guidelines.

2.      History and Character of Defendant

In accordance with 18 U.S.C. § 3553(a)(1), the Court also considers the history and characteristics of Defendant. Defendant is a twenty-three-year-old man with no prior criminal history. Defendant is known for his non-assertive personality. Several people, including Defendant's school counselor, noted that he is a follower who has always been very susceptible to

influence by others.

Except for a six-month period when he lived and worked with an uncle, Defendant has always lived at home with his mother. According to the PSR, Defendant maintains a good relationship with his siblings, mother and stepfather. Defendant's family is very supportive and committed to helping him become, and remain, drug-free. While ultimately unsuccessful, the Court is impressed with Defendant's parents' efforts to protect Defendant from the influence of Mr. Kee.

Defendant has been addicted to methamphetamine since he was seventeen and his drug addiction has interfered with his ability to complete school and hold down a job. When Defendant is free of illegal substances, he is able to stay employed and contribute to society. The Court received numerous letters from individuals attesting to Defendant's good character and hard-working nature.

3.      Needs of the Public and Any Victims of Crime

The need to protect the public from further crimes mandates the imposition of some term of imprisonment. Defendant recognizes that his drug addiction led him to commit illegal acts. While Defendant has committed to remaining drug-free and has made significant strides in that direction--maintaining a drug-free status for two separate nine-month periods following his arrest, Defendant remains a threat to the public due to his on-going struggle with addiction. A period of incarceration long enough to complete a drug treatment program is necessary to help Defendant overcome his addiction and eliminate the risk of future illegal behavior. The lengthy sentence required by the Guidelines, however, is unnecessary to protect the public from further crimes by Defendant and would not further Defendant's efforts to overcome his addiction and become a

9

productive member of society.

      4.      Deterrence

The lengthy Guidelines sentence is not necessary to deter future criminal conduct by Defendant. Defendant's illegal conduct was committed in order to supply his drug addiction. If Defendant can overcome his drug addiction, additional deterrence will not be necessary. The fact that Defendant's participation in the sale of distribution quantities of methamphetamine was the result of aggressive encouragement and involvement by the government suggests that Defendant is less likely to commit similar crimes in the future.

## IV.   Imposition of Sentence

After giving careful consideration to Defendant's case and the recommended Guidelines sentence, this Court determined at the sentencing hearing that a sentence outside the advisory Guidelines was reasonable and comported with the sentencing considerations set forth in § 3553(a). Of particular importance to the Court in reaching its decision was the extent of the government involvement in Defendant's criminal acts. Considering all the factors discussed above, the Court determined that a sentence of thirty-seven months imprisonment was sufficient, but not greater than necessary, to promote the purposes of sentencing.

## CONCLUSION

At the sentencing hearing on February 15, 2006, after considering the Sentencing Guidelines, the *Booker* decision, and 18 U.S.C. § 3553(a), the Court granted Defendant a non-Guidelines sentence. The Court has enunciated its findings and the basis for the sentence in this Memorandum Opinion and Order. This Opinion and Order shall be appended to Defendant's judgment and commitment form.

**IT IS THEREFORE ORDERED** that Defendant is committed to the custody of the Bureau of Prisons for a term of thirty-seven months, with other conditions that appear in the judgment.

**DATED** this 13st day of March, 2006.

                                                    (Electronically signed)
                                                  MARTHA VÁZQUEZ
                                                  CHIEF UNITED STATES DISTRICT JUDGE

Attorney for the United States:
    James Braun, Esq.

Attorney for Defendant:
    Joe Romero, Jr., Esq.